

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN            AUSTIN 11, TEXAS
JOHN REX SHEPPERD
ATTORNEY GENERAL.

Honorable Geo. A. Hight, Chief Accountant
Board of County and District Road Indebtedness
Austin, Texas          Opinion Number O-4474

          Re:   Can The Board of County and District
               Road Indebtedness, under the terms of
               H.B. 6, and under the provisions of
               the refunding plan, continue to partic-
               ipate in the interest maturities on the
               $195,000 representing the county's por-
               tion of the sinking fund deficit until
               June 10, 1952, the maturity date of
Dear Mr. Hight:          the obligations as presently set up?

      We acknowledge receipt of your opinion request of March 4, and quote from your letter as follows:

      "On January 1, 1933, the Board of County and District Road Indebtedness approved for participation in the County and Road District Highway Fund, Hidalgo County Road & Bridge Refunding Bonds, Series 1932, outstanding in the amount of $1,099.000.00.

      "The percentage of participation was certified at 55%.

      "This is a term issue of bonds maturing in twenty (20) years with an annual sinking fund requirement of $54,950.00 of which the State's portion is $30,222.50 and the county's portion $24,-727.50. The State has provided each year its portion of the annual sinking fund requirement and has used the funds thus allocated to purchase and cancel obligations of this issue.

      "The county has only provided $52,000.00 of its sinking fund requirement, leaving a deficit in the county requirement amounting to $195,000.00.

      "It is now proposed to refund this issue of bonds excepting $195,000.00 representing the county's sinking fund deficit, into two issues of bonds, Series 'A' to contain the balance owed on the original debt by the State and will participate at 100%. The other, Series 'B' will be a county obligation. The $195,000.00 representing the county's sinking fund deficit and not included in the refunding is to remain outstanding as presently set up.

"It is further proposed that the State in addition to paying the interest on Series 'A', which represents the unpaid portion of the debt owed by the State, the State will continue to pay 55% of the interest on the $195,000.00 not included in the refunding program and not having any State participation until 1952, the maturity date of the present issue.

"QUESTION: Can this Board, under the terms of H.B. 6, and under the provisions of this refunding plan, continue to participate in the interest maturities on the $195,000.00, representing the county's portion of the sinking fund deficit until June 10, 1952, the maturity date of the obligations as presently set up?

It is our understanding that this is a term issue of bonds maturing on June 10, 1952, and that said bonds are limited tax bonds.

Our opinion is that the clear and unambiguous language of H.B. 6 (Acts 47th Leg., 1st C.S.) requires that the question be answered in the negative. In Section 6(m) of H.B. 6 we find the following language:

" *** Any County, the Commissioners' Court of which fails or refuses to comply with the provisions of this Act in all things, including the levy, assessment, and collection of a tax and at a rate sufficient to pay all sums due or to become due, which the State is unable to pay or to provide each year the proportionate amount of sinking fund required to redeem its outstanding bonds at their maturity shall not participate in any of the benefits of this Act so long as such county fails or refuses to comply with the provisions thereof ***". (Emphasis supplied).

It is apparent that the county has failed to comply with the Act in all things. It has failed to provide each year the proportionate amount of sinking fund required to redeem its outstanding bonds at their maturity.

If the county were allowed to continue participation in State funds the State would be paying more money than is contemplated by the Act. In this respect, then there would be no difference in the situation where the State would continue payment of interest after the maturity date of the obligations which remained undischarged through default of the county.

It is an elementary rule that revenue statutes are strictly construed. It is our opinion that H.B. 6 comes within this rule. Therefore, in view of the clear wording of the excerpt quoted above from H.B. 6 we do not believe that Hidalgo County is entitled to any kind of participation in the County and Road District Highway Fund.

In view of the foregoing it is our opinion that the Board of County and District Road Indebtedness is without authority to pay State funds to Hidalgo County until the deficit is made up by the county, and that the issuance of two refunding bond issues would not alter the situation as far as the county's not being entitled to participation.

In view of the foregoing it also follows that under the terms of H.B. 6 and under the provision of the refunding plan stated in your request, the Board cannot legally continue to participate in the interest maturities on the $195,000 representing the county's portion of the sinking fund deficit, until June 10, 1952, the maturity date of the obligations as presently set up.

Trusting that this answers your question, we are

APPROVED MAR 18, 1942

GROVER SELLERS
First Assistant Attorney General
COB:s:hep

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By    s/ Claud O. Boothman
      Claud O. Boothman
          Assistant